UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No. _____

NOBEL DIAZ                                                      )
                                                                )
         Plaintiff,                                             )
                                                                )
v.                                                              )
                                                                )
HOLCOMBE U.S.A., Inc. d/b/a                                     )
AUTOSHOW SALES AND SERVICE a/k/a                                )
QUICK AUTO LOAN and MOTORHOUSE                                  )
INC d/b/a MOTORHOUSE,                                           )
                                                                )
         Defendants.                                            )

## COMPLAINT

The Plaintiff, NOBEL DIAZ, sues the Defendants, HOLCOMBE U.S.A., Inc. d/b/a AUTOSHOW SALES AND SERVICE a/k/a QUICK AUTO LOAN and MOTORHOUSE INC d/b/a MOTORHOUSE, and alleges:

1. This is an action to recover money damages for retaliation and unlawful discharge under the laws of the United States and Florida. This Court has jurisdiction pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201-219 ("the Act"), 28 U.S.C. § 1331, and under 28 U.S.C.A. § 1367 for the violations of Florida law.

2. Plaintiff, NOBEL DIAZ ("DIAZ" or "Plaintiff"), is a resident of Collier County, Florida, within the jurisdiction of this Honorable Court. DIAZ is a covered employee for purposes of the Act.

3. Defendants HOLCOMBE U.S.A., Inc. d/b/a AUTOSHOW SALES AND SERVICE a/k/a QUICK AUTO LOAN and MOTORHOUSE INC d/b/a MOTORHOUSE ("AUTOSHOW" and "MOTORHOUSE," respectively, and  "Defendants," collectively) are Florida corporations having their main place of business in Broward County, Florida, and at all

1

times material hereto were and are engaged in interstate commerce. Defendants sell, and finance the sales of, automobiles.

4. Upon information and belief, Defendants have contracted with each other, by written or oral agreement, whereby AUTOSHOW has at all times material retained sufficient control over the terms and conditions of employment of MOTORHOUSE employees.

5. Upon information and belief, at all relevant times, AUTOSHOW has been highly integrated with respect to both ownership and operations of the business being conducted on the premises of MOTORHOUSE.

6. Upon information and belief, at all relevant times, AUTOSHOW has delegated sufficient control of traditional rights over employees of MOTORHOUSE, or MOTORHOUSE has delegated sufficient control of traditional rights over employees of AUTOSHOW, such as:

   a. Being directly involved in managing the day-to-day operations;

   b. Administering and implementing policy and procedure relating to job duties;

   c. Administering and implementing policy and procedure for work schedules for all classifications of employment;

   d. Administering and implementing policy and procedure for all classifications of FLSA covered and/or non-covered employees;

   e. Establishing personnel policy, wage structure and staff schedules;

   g. Establishing recommended charges, accounting procedures; and

   h. Performing other services to be learned through discovery.

7. Thus, at all times relevant, the Defendants were a single integrated enterprise, collectively the "joint employer" or "employer" of Plaintiff.

8. Plaintiff started to work for Defendants around February 8, 2016, as a controller.

9. Around February 17, 2016, Plaintiff met with Defendants' owner, Paul Rogers

("P. Rogers"), and his wife Linda Rogers ("L. Rogers") to evaluate the situation of Defendants' accounting department. At that meeting, Plaintiff told P. Rogers and L. Rogers that the gap insurance policies sold to customers – some even sold in 2014-2015 – were never submitted to insurance companies and advised them that these practices were in violation of a law, rule or regulation. Plaintiff objected to Defendants' noncompliance and advised that the matter had to be rectified.

10. Specifically, the activities and practices referenced in Paragraph 9 are in direct violation of Fla. Stat. § 626.561(1) and (3), which states in relevant part:

> (1) All premiums, return premiums, or other funds belonging to insurers or others received by an agent, insurance agency, customer representative, or adjuster in transactions under the license are trust funds received by the licensee in a fiduciary capacity. An agent or insurance agency shall keep the funds belonging to each insurer for which an agent is not appointed, other than a surplus lines insurer, in a separate account so as to allow the department or office to properly audit such funds. The licensee in the applicable regular course of business shall account for and pay the same to the insurer, insured, or other person entitled thereto.
> ****
> (3) Any agent, insurance agency, customer representative, or adjuster who, not being lawfully entitled thereto, either temporarily or permanently diverts or misappropriates such funds or any portion thereof or deprives the other person of a benefit therefrom commits the offense specified below:
> (a) If the funds diverted or misappropriated are $300 or less, a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083.
> (b) If the funds diverted or misappropriated are more than $300, but less than $20,000, a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
> (c) If the funds diverted or misappropriated are $20,000 or more, but less than $100,000, a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
> (d) If the funds diverted or misappropriated are $100,000 or more, a felony of the first degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

11. On or about February 19, 2016, Plaintiff advised by one of Defendants' employees that at least 50 tag refund checks issued on July 15, 2015, were never mailed to

customers. Plaintiff advised L. Rogers that these practices were in violation of a law, rule or regulation. Plaintiff objected to Defendants' noncompliance and advised that Defendants could not keep those funds and that the funds had to be refunded to the customers or returned to the State of Florida.

12. Specifically, the activities and practices referenced in Paragraph 11 are in direct violation of Fla. Stat. § 320.08, which sets forth the actual fees authorized by statute for title and regulations, and which states, in relevant part:

> 320.08  License taxes.—Except as otherwise provided herein, there are hereby levied and imposed annual license taxes for the operation of motor vehicles, mopeds, motorized bicycles as defined in s. 316.003(2), tri-vehicles as defined in s. 316.003, and mobile homes as defined in s.320.01, which shall be paid to and collected by the department or its agent upon the registration or renewal of registration of the following:
> (2) AUTOMOBILES OR TRI-VEHICLES FOR PRIVATE USE.—
> (a) An ancient or antique automobile, as defined in s. 320.086, or a street rod, as defined in s.320.0863: $7.50 flat.
> (b) Net weight of less than 2,500 pounds: $14.50 flat.
> (c) Net weight of 2,500 pounds or more, but less than 3,500 pounds: $22.50 flat.
> (d) Net weight of 3,500 pounds or more: $32.50 flat.

13. On or about February 26, 2016, Plaintiff once again met with P. Rogers and L. Rogers. Plaintiff informed them, and objected to the fact, that Defendants were not processing tag registrations within the 30-day period that the State of Florida mandated. Plaintiff further advised that he had noticed and corrected several cases where vehicles had been sold in October and November 2015 where tag registrations had not been processed as of late February 2016. Plaintiff advised P. Rogers and L. Rogers that these practices were in violation of a law, rule or regulation.

14. Specifically, the activities and practices referenced in Paragraph 13 are in direct violation of Fla. Stat. §§ 319.23 (6) and 320.27, which state, in relevant part:

§ 319.23

(a)  In the case of the sale of a motor vehicle or mobile home by a licensed dealer to a general purchaser, the certificate of title must be obtained in the name of the purchaser by the dealer upon application signed by the purchaser, and in each other case the certificate must be obtained by the purchaser. In each case of transfer of a motor vehicle or mobile home, the application for a certificate of title, a corrected certificate, or an assignment or reassignment must be filed within 30 days after the delivery of the motor vehicle or after consummation of the sale of the mobile home to the purchaser. An applicant must pay a fee of $20, in addition to all other fees and penalties required by law, for failing to file such application within the specified time. In the case of the sale of a motor vehicle by a licensed motor vehicle dealer to a general purchaser who resides in another state or country, the dealer is not required to apply for a certificate of title for the motor vehicle; however, the dealer must transfer ownership and reassign the certificate of title or manufacturer's certificate of origin to the purchaser, and the purchaser must sign an affidavit, as approved by the department, that the purchaser will title and register the motor vehicle in another state or country.
(b)  If a licensed dealer acquires a motor vehicle or mobile home as a trade-in, the dealer must file with the department, within 30 days, a notice of sale signed by the seller. The department shall update its database for that title record to indicate "sold." A licensed dealer need not apply for a certificate of title for any motor vehicle or mobile home in stock acquired for stock purposes except as provided in s. 319.225.
****
§320.27
(9)    DENIAL, SUSPENSION, OR REVOCATION.—
(b)    The department may deny, suspend, or revoke any license [to a dealer] issued hereunder or under the provisions of s. 320.77 or s. 320.771 upon proof that a licensee has committed, with sufficient frequency so as to establish a pattern of wrongdoing on the part of a licensee, violations of one or more of the following activities:
6.    Failure to apply for transfer of a title as prescribed in s. 319.23(6).

15.    On or around February 27, 2016, Plaintiff was advised by one of Defendants' employees that a customer had been issued four (4) temporary tags, and that Defendants had altered the VIN number of the vehicle involved in order to go around the system and issue the multiple temporary tags. Plaintiff also became aware that Defendants were issuing temporary tags from both stores (AUTOSHOW and MOTORHOUSE) for the same vehicle. Plaintiff objected to these practices and advised L. Rogers that these practices were in violation of a law,

5

rule or regulation.

16.     Specifically, the activities and practices referenced in Paragraph 15 are in violation of Fla. Stat. §§ 319.33, 320.131, and Fla. Admin. Code R. 15C-7.002(9), which state, in relevant part:

> § 319.33
> (1)  It is unlawful:
> (d)  To possess, sell or offer for sale, conceal, or dispose of in this state a motor vehicle or mobile home, or major component part thereof, on which any motor number or vehicle identification number that has been affixed by the manufacturer or by a state agency, such as the Department of Highway Safety and Motor Vehicles, which regulates motor vehicles has been destroyed, removed, covered, altered, or defaced, with knowledge of such destruction, removal, covering, alteration, or defacement, except as provided in s. 319.30(4).
> (e)  To use a false or fictitious name, give a false or fictitious address, or make any false statement in any application or affidavit required under the provisions of this chapter or in a bill of sale or sworn statement of ownership or otherwise commit a fraud in any application.
> ***
> § 320.131
> (2) … Except as specifically provided otherwise, a temporary tag shall be valid for 30 days, and no more than two shall be issued to the same person for the same vehicle.
> (3)  Any person or corporation who unlawfully issues or uses a temporary tag or violates this section or any rule adopted by the department to implement this section commits a noncriminal infraction, punishable as a moving violation as provided in chapter 318 in addition to other administrative action by the department. Using a temporary tag that has been expired for a period of 7 days or less is a noncriminal infraction, and is a nonmoving violation punishable as provided for in chapter 318.
> (5)  Any person who knowingly and willfully abuses or misuses temporary tag issuance to avoid registering a vehicle requiring registration pursuant to this chapter or chapter 319 commits a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083.
> (7)  Any person authorized by this section to purchase and issue a temporary tag shall maintain records as required by this chapter or departmental rules, and such records shall be open to inspection by the department or its agents during reasonable business hours. Any person who knowingly and willfully fails to comply with this subsection commits a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083.
> (8)  The department shall administer an electronic system for licensed motor vehicle dealers to use for issuing temporary tags. If a dealer fails to comply with the department's requirements for issuing temporary tags using

> the electronic system, the department may deny, suspend, or revoke a license under s.320.27(9) (b) 16. upon proof that the licensee has failed to comply with the department's requirements. The department may adopt rules to administer this section.
> ***
> 15C-7.002(9) Dealers shall maintain records of temporary tags purchased and issued. The record shall be arranged by a listing in numerical order of each tag purchased and sold. The record shall contain the tag number, the date purchased, the name of the party from whom purchased, the date sold, the name of the party to whom it was sold, the vehicle identification number of the vehicle for which it was issued, the issue date and the expiration date.

17. On or around February 27, 2016, Plaintiff became aware that some employees were being asked to clock out but required to continue working in order to avoid issues with the FLSA's overtime provisions. Plaintiff discussed the issue with Defendants' payroll clerk and advised L. Rogers that these practices were in violation of a law, rule or regulation and had to be stopped immediately.

18. Specifically, the activities and practices referenced in Paragraph 17 are in violation of 29 U.S.C §207(1), which states, in relevant part:

> (1) Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

19. On or around February 29, 2016, Plaintiff advised L. Rogers that he came across a deal in which no sales taxes had been collected and that there was no documentation that the vehicle involved had been shipped to the customer. L. Rogers responded, "I know, we are not doing a good job at it." Plaintiff advised L. Rogers that Defendants had a legal obligation to collect all sales taxes and that failure to do so was in violation of a law, rule or regulation.

20. Specifically, the activities and practices referenced in Paragraph 19 are in

violation of Fla. Stat. §§ 212.05 and 212.06 which state, in relevant part:

> 212.05  Sales, storage, use tax.—It is hereby declared to be the legislative intent that every person is exercising a taxable privilege who engages in the business of selling tangible personal property at retail in this state, including the business of making mail order sales, or who rents or furnishes any of the things or services taxable under this chapter, or who stores for use or consumption in this state any item or article of tangible personal property as defined herein and who leases or rents such property within the state.
> (1)     For the exercise of such privilege, a tax is levied on each taxable transaction or incident, which tax is due and payable as follows:
> (a)1. a.   At the rate of 6 percent of the sales price of each item or article of tangible personal property when sold at retail in this state, computed on each taxable sale for the purpose of remitting the amount of tax due the state, and including each and every retail sale.
> ***
> 212.06  Sales, storage, use tax; collectible from dealers; "dealer" defined; dealers to collect from purchasers; legislative intent as to scope of tax.—
> (1) (a)  The aforesaid tax at the rate of 6 percent of the retail sales price as of the moment of sale, 6 percent of the cost price as of the moment of purchase, or 6 percent of the cost price as of the moment of commingling with the general mass of property in this state, as the case may be, shall be collectible from all dealers as herein defined on the sale at retail, the use, the consumption, the distribution, and the storage for use or consumption in this state of tangible personal property or services taxable under this chapter. The full amount of the tax on a credit sale, installment sale, or sale made on any kind of deferred payment plan shall be due at the moment of the transaction in the same manner as on a cash sale.
> (2)(c)   The term "dealer" is further defined to mean every person, as used in this chapter, who sells at retail or who offers for sale at retail, or who has in his or her possession for sale at retail; or for use, consumption, or distribution; or for storage to be used or consumed in this state, tangible personal property as defined herein, including a retailer who transacts a mail order sale.

21. On or about March 8, 2016, Defendants fired Plaintiff.

### COUNT I: FEDERAL STATUTORY VIOLATION PURSUANT TO 29 U.S.C. 215(a)(3) -- RETALIATORY DISCHARGE

22. Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 through 21 above as if set out in full herein.

23. 29 U.S.C. § 206(a)(3) states that it shall be unlawful for any person "to discharge or in any manner discriminate against any employee because such employee has filed any

complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in such proceeding . . . ."

24. Plaintiff complained to Defendants about employees being required to clock out and keep working off the clock in order to avoid paying overtime.

25. On or about March 8, 2016, Plaintiff was terminated.

26. Among the main motivating factors, which caused Plaintiff's discharge as described above, were Plaintiff's complaints to Defendants, asking to discontinue requiring employees to clock out and continue working off the clock to avoid FLSA overtime issues. In other words, Plaintiff would not have been fired but for his complaints about employees being required to clock out and continue working off the clock to avoid FLSA overtime issues. The Defendants' termination of Plaintiff was in direct violation of 29 U.S.C. § 215(a)(3) and, as a direct result, Plaintiff has been damaged.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff requests that this Honorable Court:

A. Enter a judgment against the Defendants for all back wages from the date of discharge to the present date and an equal amount of back wages as liquidated damages, attorneys' fees, costs, and;

B. Order reinstatement, promotion and injunctive relief prohibiting the Defendants from discriminating in the manner described above, emotional distress and humiliation, and pain and suffering, front wages, as well as other damages recoverable by law under 29 U.S.C. § 216(b).

C. Award Plaintiff attorney's fees and costs.

D. Grant such other relief, as this Honorable Court may deem proper.

**COUNT II: VIOLATION OF FLORIDA PRIVATE
WHISTLEBLOWER ACT**

27. Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-21 above as if set out in full herein.

28. This is an action to recover damages resulting from unlawful and retaliatory discharge.

29. Jurisdiction is proper because Plaintiff seeks more than $15,000 in damages exclusive of costs, interest and attorney's fees and pursuant to Article V, §20(e)(3) of the Florida Constitution and Fla. Stat. §26.012(2)(c) (1995) because Plaintiff seeks equitable relief.

30. Venue is proper in this district because Plaintiff was employed in Broward County by the Defendants, which at all times relevant hereto had and still have offices in Broward County, and pursuant to Florida Statutes §448.103(1)(b) because the retaliatory personnel actions occurred in Broward County.

31. All conditions precedent to bringing this action have occurred, been performed or been excused.

32. Defendants are firms, partnerships, institutions, corporations or associations that employ ten or more persons and are therefore an "employer" under Florida law.

33. Plaintiff was a person who performed services for and under the control and direction of Defendants for wages and other remuneration. Specifically, the Plaintiff worked for the Defendants as the Controller.

34. Plaintiff was an employee of the Defendants and objected to or refused to participate in an activity or practice of the employer, which is in violation of a law, rule or regulation.

35. Specifically, the Defendants engaged in the illegal practices set forth in Paragraphs 9 to 20 of this Complaint.

36. Plaintiff specifically objected to Defendants' illegal practices set forth in Paragraphs 9 to 20 of this Complaint.

37. Because the Plaintiff objected to the above-mentioned illegal practices or activities of the Defendants, the Defendants fired Plaintiff.

38. The Defendants' requirement that the Plaintiff continue working under the conditions outlined in paragraphs 9 to 20 of this Complaint and the subsequent termination of the Plaintiff were in violation of Fla. Stat. § 448.102(3), which provides that "[a]n employer may not take any retaliatory personnel action against an employee because the employee: objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation."

39. As a result of the Defendants' wrongful termination, Plaintiff has suffered damages

**WHEREFORE**, Plaintiff demands damages against the Defendants for violation of Florida's Private Sector Whistle-blower's Act (Section 448.102, Fla. Stat.), including but not limited to all relief available under Section 448.103, Fla. Stat., such as:

A. An injunction restraining continued violation of this statute;

B. Reinstatement of Plaintiff to the same position held before the retaliatory personnel action, or to an equivalent position;

C. Reinstatement of full fringe benefits and seniority rights;

D. Compensation for lost wages, benefits, and other remuneration;

E. Any other compensatory damages allowable at law;

F. Attorney's fees, court costs and expenses; and

G. Such other relief this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury of all issues so triable as of right.

Dated: July 25, 2016.

Respectfully submitted,

By:*/s/ R. Martin Saenz*
R. Martin Saenz, Esquire
Fla. Bar No.: 0640166
Email: msaenz@saenzanderson.com
Andres Rivera-Ortiz, Esquire
FBN: 373478
Email: andres@saenzanderson.com
SAENZ & ANDERSON, PLLC
20900 N.E. 30th Avenue, Ste. 800
Aventura, Florida 33180
Telephone: (305) 503-5131
Facsimile: (888) 270-5549